IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| J.S., | ) | |
| *a minor by his Parent and Next Friend, L.S.,* | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:23-cv-00675 (AJT/IDD) |
| | ) | |
| FAIRFAX COUNTY SCHOOL BOARD, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

In this administrative appeal, Plaintiff J.S., through his parents ("Parents"), seeks reimbursement of private school tuition pursuant to the Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400 *et. seq.* ("IDEA"). Based on the administrative record, the parties have filed cross-motions for summary judgment as to Count II, [Doc. Nos. 60, 66], in which Plaintiff seeks reimbursement for past private school tuition; and Count III, [Doc. Nos. 63, 67], in which Plaintiff seeks a declaration that Parents are entitled to on-going private school tuition during the pendency of these proceedings.[1] Oral argument was heard on February 21, 2024. For the reasons that follow, the Court will grant both of the Defendant's motions [Doc. Nos. 66, 67], and deny both of Plaintiff's motions [Doc. Nos. 60, 63].

## I.   BACKGROUND

Plaintiff is an elementary school-aged student who was found eligible for special education benefits under the IDEA due to developmental delays before entering kindergarten. He began receiving those special education services in preschool. Administrative Record ("A.R.") 115; 348-

---

[1] Count I, seeking an award of attorneys' fees and costs incurred during the administrative process, was dismissed by stipulation following a settlement as to that Count before the filing of the Motions. [Doc. No. 53]; *see also* [Doc. No. 54].

007.[2] Despite these services, Plaintiff struggled to advance in reading at the rate of his peers; at the end of first grade in the spring of 2019, he did not pass a kindergarten-level reading assessment. A.R. 124. In October 2019, a student evaluation showed that Plaintiff was suffering from processing deficits and was diagnosed with dyslexia. A.R. 348-008–09; A.R. 139.

As a result of the diagnosis, in February 2020, Defendant Fairfax County Public Schools ("FCPS") developed for Plaintiff an individualized education plan ("IEP") that recommended specific special education services. Around the same time, Plaintiff was evaluated by an independent psychologist who found that Plaintiff's reading skills showed severe deficits, and that intensive work would be required to address those deficits, such as an Orton-Gillingham-based program. A.R. 239-008; A.R. 348-009–010. These findings were shared with the FCPS IEP team in May of 2020. The team determined that the February 2020 IEP services were still appropriate. A.R. 161; A.R. 348. Plaintiff's mother signed the May 2020 IEP, consenting to these services. A.R. 159; A.R. 282-115:15–17; A.R. 348.

Due to the COVID-19 pandemic, FCPS announced in the summer of 2020 that it would continue with virtual instruction at the start of the 2020-2021 academic year. A.R. 285-032. FCPS did not provide in-person services to students with disabilities who, like Plaintiff, required in-person instruction under their IEPs. A.R. 348-012 ¶ 16. Plaintiff struggled to make progress on his reading deficits in the virtual environment. A.R. 348-013; *see also* A.R. 282; A.R. 243-44:1–11; A.R. 283-115; A.R. 284-059:15–18. As a result, Parents requested another IEP meeting in November 2020—while the May 2020 IEP was still operative—and at the meeting, requested additional support, including (as relevant to this action) a private day school placement. The

---

[2] The administrative record was filed in more than 100 separate district court docket entries, and the Parties in their briefing refer to the administrative record rather than the district court docket entries.  The Court therefore refers to the administrative record citations for the purposes of this Order.

request for the private placement was denied. A.R. 348-016; A.R. 180. Instead, the November 2020 IEP provided more hours of special education services than the hours previously offered, and also offered supplemental services. *Id.* For example, beginning December 7, 2020, Plaintiff was given for one hour each day the Orton-Gillingham instruction requested by Parents. A.R. 284-055.

Parents rejected the November 2020 IEP and expressly denied consent in a letter to FCPS on December 10, 2020. A.R. 182-004; 348-017 ¶ 26. In response, the IEP team again met with Parents in January 2021 to address Parents' concerns, while at the same time rejecting Parents' repeated requests for a private day school placement. The January 2021 IEP offered only virtual services until FCPS returned to in-person instruction, which FCPS anticipated would resume that school year, although when was unknown.  A.R. 348-018–19; A.R. 188-021; A.R. 189. The January 2021 IEP also contemplated discussions to develop an addendum for "face to face service delivery" to Plaintiff before his return to in-person instruction. A.R. 188-021. On February 9, 2021, FCPS informed all FCPS parents, including Plaintiff's parents, that FCPS schools would return to two days per week of in-person instruction beginning in March 2021. A.R. 99-001–4; A.R. 285-022–25.

One week after the February 9, 2021 return-to-school notification was sent out, Parents removed Plaintiff from FCPS and enrolled him at the Oakland School, a private school in Charlottesville, Virginia. A.R. 348-020 ¶ 34. Parents also applied to private day schools in the District of Columbia metropolitan area that were offering in-person instruction, including the Lab School of Washington ("Lab School"). A.R. 282; A.R. 288:9–289:6; A.R. 225. The Lab School notified Parents in March of 2021 that they could enroll Plaintiff for the following (2021-2022) academic year. A.R. 282; A.R. 289:11–18. On March 16, 2021, without notifying FCPS of their decision to switch private schools, or maintain private enrollment for the following school year,

Parents enrolled Plaintiff and paid the tuition deposit for the Lab School. A.R. 226. After Parents had removed Plaintiff from FCPS, but before enrolling him for the following year at the Lab School, FCPS wrote to Parents to ask them to contact his school, Westbriar Elementary, if they wished to schedule a new IEP meeting to revise the January 2021 IEP. A.R. 192. Parents did not respond to the letter.

FCPS returned to in-person instruction four days per week by mid-April 2021 and began the 2021-2022 academic year with five days per week of in-person instruction. A.R. 348-029. Parents were aware of these developments due to communications from FCPS and because they had another student enrolled in the school district. Notwithstanding the return to in-person instruction, in July 2021, in connection with their demand letter for reimbursement for private school expenses, Parents informed FCPS that they planned to enroll Plaintiff in the Lab School for the 2021-2022 academic year. A.R. 195. Following receipt of that letter, FCPS wrote to Parents to schedule an IEP meeting, but Parents did not respond to the letter. A.R. 284 at 230.

In the fall of 2022, after Plaintiff completed the 2021-2022 academic year at the Lab School and started the 2022-2023 academic year, Parents requested a due process hearing under the IDEA, asserting that FCPS did not provide Plaintiff with a free appropriate public education ("FAPE") under the January 2021 IEP, and based on that alleged denial of a FAPE, sought reimbursement for the 2021 spring term tuition at the Oakland School and tuition for academic years 2021-2022 and 2022-2023 at the Lab School. A.R. 112. As explained by counsel at oral argument on the Motions, Parents chose to wait to request a due process hearing in order to use the progress that was made at the Lab School as evidence that it was an appropriate placement.

The due process hearing was conducted over four days, with twelve witnesses and 286 exhibits. A.R. 348-004. On February 22, 2023, the hearing officer issued a written decision with

41 findings of fact, including that the January 2021 IEP was not reasonably calculated to enable Plaintiff to make progress due to the lack of in-person instruction, and was therefore a denial of FAPE. A.R. 348-031. Accordingly, the officer awarded Parents reimbursement for the spring term of 2021 at the Oakland School. *Id.* However, the hearing officer denied Parents' request for reimbursement of the Lab School tuition, including the prospective tuition requested for the 2022-2023 year, on the grounds that the parents had failed to establish that Plaintiff had been denied a FAPE for those academic years. In that regard, the hearing officer concluded that because the Parents had not initiated a due process hearing before withdrawing Plaintiff from the Oakland School and enrolling him in the Lab School, or otherwise engaged in the IEP process at the district's invitation, FCPS was not required unilaterally to develop and present to the Parents a new or revised IEP[3]; and Parents could not rely on the defective January 2021 IEP in order to establish the denial of a FAPE for the 2021-2022 or 2022-2023 academic years.

Plaintiff, through his Parents, now appeals the hearing officer's determination that Parents are not entitled to reimbursement for the Lab School tuition (Count II) and seeks a declaratory judgment that FCPS is required to pay Plaintiff's tuition at the Lab School through the present proceedings based on the "stay put" provisions of the IDEA and Virginia's stay-put regulations implementing the IDEA (Count III). *See* [Doc. No. 1] ¶¶ 93, 106.

---

[3] Parents note, and FCPS does not contest, that absent FCPS's revision to the IEP, the January 2021 IEP would have remained active for an entire year, *i.e.*, through the fall of 2021. However, the hearing officer's decision regarding the denial of FAPE was predicated on the remote instruction that ended by the fall of 2021, and the January 2021 IEP expressly incorporated a provision to allow the school to address the in-person learning services once FCPS ended remote instruction. *See* A.R. 188-021.

## II.   LEGAL STANDARDS

### A.  *Administrative Review (Count II)*

The reviewing court in an IDEA administrative appeal must make an independent decision based on a preponderance of the evidence; however, the hearing officer's factual findings are generally considered "*prima facie* correct" and deference is due to the officer's findings on procedural compliance with the IDEA. *Doyle v. Arlington Cnty. Sch. Bd.*, 953 F.2d 100, 105 (4th Cir. 1991) (absent a departure from fact finding norms, the facts found by the local hearing officer are entitled to *prima facie* correctness). Accordingly, if the district court does not follow the factual findings of the officer, "it must explain why not." *Id*. Where the parties dispute only the legal conclusions reached, however, the district court reviews the legal conclusions *de novo*. *See E.L. ex rel. Lorsson v. Chapel Hill-Carrboro Bd. of Educ.*, 773 F.3d 509, 514 (4th Cir. 2014).[4]

### B.  *Summary Judgment (Count III)*

The entry of summary judgment is appropriate only when the Court, viewing the record as a whole and in the light most favorable to the nonmoving party, finds that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Tolan v. Cotton*, 572 U.S. 650, 655–57 (2014); *Scott v. Harris*, 550 U.S. 372, 380 (2007). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

---

[4] In his Complaint, Plaintiff appears to challenge the hearing officer's factual findings, *see* [Doc. No. 1] ¶ 93; however, in substance, and as confirmed during oral argument, Plaintiff only challenges the hearing officer's failure to consider certain evidence (the relevance of which is a legal issue) and his legal conclusions regarding reimbursement.

6

### III.    DISCUSSION

Congress enacted the IDEA in order "to ensure that all children with disabilities have available to them a free appropriate public education" to meet their needs. 20 U.S.C. § 1400(d)(1)(A). That said, and notwithstanding the goal that every child benefit from an educational opportunity, the guarantee of a free appropriate public education ("FAPE") does not ensure the highest quality education; rather, a school district satisfies its statutory obligation when it provides instruction and support services that "permit the child to benefit educationally." *Id.* at 203. Accordingly, "a FAPE must be reasonably calculated to confer some educational benefit on a disabled child." *MM ex rel. DM v. Sch. Dist. of Greenville Cnty.*, 303 F.3d 523, 526 (4th Cir. 2002). The touchstone of FAPE is whether the instruction and services allow the child to make progress. *Barnett v. Fairfax County Sch. Bd.*, 927 F.2d 146, 153 (4th Cir. 1991); *Endrew F. ex rel. Joseph F. v. Douglas Cnty. Sch. Dist. RE-1*, 137 S. Ct. 988, 999 (2017) (FAPE requires a "reasonable" IEP but it does not need to be "ideal"). If a school district fails to provide a student with a FAPE, parents may remove the student from the public school and unilaterally place the student in a private school and seek reimbursement for the placement through a due process hearing, provided that the parents give the school district notice that they reject the proposed IEP at the last IEP meeting or at least 10 days before the student is removed from the school. 20 U.S.C. § 1412(a)(10)(C)(iii); *see also Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 247 (2009).

Plaintiff, through his parents, seeks reimbursement of tuition for Plaintiff's Lab School placement during the 2021-2022 and 2022-2023 academic years for two primary reasons: (1) notwithstanding that a FAPE may have become available in the fall of 2021, Parents were required to make a decision about Lab School enrollment for 2021-2022 in March of 2021 when there was insufficient in-person instruction to provide Plaintiff with a FAPE at FCPS and no assurance of a

FAPE for the next academic year; and (2) the hearing officer found—and FCSB does not dispute—that the Oakland School was an appropriate placement in the spring of 2021 when a FAPE was not available at FCPS, and that decision effectively decided that a private school placement generally, not just the Oakland School, constituted Plaintiff's "stay put" placement through the present appeal. [Doc. No. 61] at 18–19, 24–25.

In response to these contentions, FCSB argues that Parents are not entitled to reimbursement for the 2021-2022 or 2022-2023 years because (1) they did not provide written notice to FCPS of their intent to enroll Plaintiff in a private school other than the Oakland School for the 2021-2022 academic year, that is, the Lab School; and (2) Parents, who carry the burden of establishing the denial of a FAPE, did not engage in the IEP process after January 2021 despite repeated outreach by FCPS, and therefore are foreclosed from claiming that Plaintiff was denied a FAPE for the 2021-2022 academic year and thereafter. [Doc. No. 68] at 18. Each of these arguments is addressed in turn.

### A. *Plaintiff Was Not Required to Provide Notice of a Change of Private Placement*

FCSB contends, as a threshold matter, that Plaintiff's parents do not qualify for reimbursement because they did not provide FCPS with written notice of Plaintiff's placement in a different private school than the one in which Plaintiff was originally enrolled in the spring of 2021. [Doc. No. 68] at 24–25. Plaintiff's parents argue, on the other hand, that the IDEA contains no such notice requirement and only requires that parents provide the school with notice of *withdrawal*. [Doc. No. 71] at 4–7 ("[R]emoval … must refer to disenrollment[.]"). FCSB has not cited to any authority in support of its position. *See* [Doc. No. 68] at 24–25.[5] After consideration

---

[5] In support of its position, FCSB argues that because the IDEA requires that an IEP be developed for each academic year, Parents were required to notify FCPS if they did not intend for Plaintiff to return in subsequent years, *see* [Doc. No. 72] at 12; but that position is at odds with FCSB's core position, based on the Fourth Circuit's holding in *MM*,

of the parties' respective positions, the Court concludes that Parents have the better argument, as there is nothing in the IDEA that would impose such a notice requirement.

The IDEA provides, in pertinent part:

The cost of reimbursement described in clause (ii) may be reduced or denied—

> (I) if—
>
> (aa) at the most recent IEP meeting that the parents attended prior to removal of the child from the public school, the parents did not inform the IEP Team that they were rejecting the placement proposed by the public agency to provide a free appropriate public education to their child, including stating their concerns and their intent to enroll their child in a private school at public expense; or
>
> (bb) 10 business days (including any holidays that occur on a business day) prior to the removal of the child from the public school, the parents did not give written notice to the public agency of the information described in item (aa) […]

20 U.S.C. § 1412(a)(10)(C)(iii). As reflected in this text, the apparent purpose of the notice requirement is to allow the school to address, if possible, a parent's rejection of a proposed IEP; the IDEA is therefore focused on giving notice to the public school of a child's removal from the public school, not on the location of the alterative placement of the child or a transfer between alternative schools.[6] Accordingly, the Parents' failure to notify FCPS of the Plaintiff's enrollment at the Lab School specifically, or otherwise notify FCPS of their plan to continue Plaintiff's enrollment at a private day school, does not bar reimbursement pursuant to Section 1412(a)(10)(C)(iii).

---

303 F.3d at 536, discussed *infra* at 14, that the IDEA does *not* require the development of an IEP where a parent unilaterally withdraws a child and does not initiate the administrative IEP review process. [Doc. No. 68] at 22.

[6] Notwithstanding the lack of a placement-specific notice requirement, parents would have the incentive to identify the place of enrollment so that any issues concerning that specific private placement—including whether it is "appropriate" under the IDEA—can be resolved through the administrative process before parents incur significant costs.

### B. The Reasonableness of the Parents' Enrollment Decision in March 2021 Is Not the Applicable Standard for Determining Their Entitlement to Reimbursement.

The Parents contend in substance that the objective reasonableness of their decision to enroll Plaintiff in the Lab School in March 2021 for the 2021-2022 school year is the central, if not dispositive issue, in determining whether they are entitled to reimbursement of private school tuition.[7] *See* [Doc. No. 61] at 17 ("It remained unknown (and unknowable) when FCPS might return to in-person instruction for five days per week [at the time of enrollment]."). Parents further contend that their decision-making should not be judged with the benefit of hindsight, such that "[t]he Decision [regarding reimbursement] should have been based on facts known (or that reasonably could have been known) when Parents rejected the January 2021 IEP and when Parents signed the Lab School Contract," citing to a line of cases that hold that a hearing officer cannot use the benefit of hindsight to make determinations about FAPE.[8] [Doc. No. 61] at 17. Based on these contentions, Parents claim that the hearing officer's findings are "contrary to law and should be reversed." *Id.* at 18 ("The Hearing Officer did not make findings of fact regarding the reasonableness or appropriateness of Parents' decision to sign the 21-22 Enrollment Contract … Parents reasonably and appropriately enrolled Student at Lab School."). FCSB did not, either before the hearing officer or in this appeal, directly contest the reasonableness of the Parents' initial enrollment decision in March 2021. Rather, it contends that the reasonableness *vel non* of the Parents' decision is irrelevant to whether there was a denial of a FAPE.

The Parents certainly faced a challenging situation in the spring of 2021, and the Court recognizes the financial risk that may sometimes be placed on parents simply trying to make a

---

[7] This standard was not stated explicitly in the briefing; but at oral argument, Plaintiff's counsel submitted, and Defendant's counsel contested, that the reasonableness of Parents' decision-making is a relevant inquiry concerning whether there has been a denial of a FAPE.

[8] *See* [Doc. No. 61] at 17 (citing *Schaffer ex rel. Schaffer v. Weast*, 554 F.3d 470, 477 (4th Cir. 2009) and *O'Toole ex rel. O'Toole v. Olathe Dist. Schs. Unified Sch. Dist. No. 233*, 144 F.3d 692, 701–02 (10th Cir. 1998)).

reasonable determination concerning how to address their child's special needs. That said, it appears settled that reimbursement under the IDEA is not predicated on the reasonableness of parents' decisions.[9] Rather, the central issue is whether Parents can establish by a preponderance of the evidence that a FAPE was *actually denied* for the academic year for which they seek reimbursement.   *See Forest Grove Sch. Dist.*, 557 U.S. at 247 ("[The] IDEA authorizes reimbursement for the cost of private special-education services when a school district fails to provide a FAPE and the private-school placement is appropriate."). In that regard, the IDEA provides procedural mechanisms to protect parents from the financial risk associated with those decisions, including an interactive process to determine whether an IEP can be developed that provides a FAPE and, as is most relevant here, the parents' right to request a due process hearing as soon as the parents believe a FAPE is being or will be denied through a proposed IEP. *See Thomason v. Porter*, No. 21-cv-6713, 2023 WL 1966207, at *11 (S.D.N.Y. Feb. 13, 2023) ("[T]he IDEA specifically contemplates a due process hearing that examines whether the IEP provided the child with a FAPE *before* the parents' enrollment of their child in a private school.") (emphasis in original); *see also* 20 U.S.C. § 1415(f)(1)(B)(ii) ("If the local educational agency has not resolved the complaint to the satisfaction of the parents *within 30 days* of the receipt of the complaint, the due process hearing may occur.") (emphasis added). Additionally, and relatedly, if a hearing officer determines that a FAPE has been denied and agrees with the parents on an appropriate alternative placement, the Virginia implementing regulations of the IDEA provide that the parents

---

[9] Parents do not cite to any cases for the proposition that the reasonableness of parents' perceptions about a FAPE, including a FAPE in future academic years, is a proper inquiry for a hearing officer, or for this Court, with respect to determinations of FAPE; and the cases that they do cite concerning "hindsight judgments" are intended to protect *the school* against challenges to appropriately designed IEPs that did not produce the contemplated or hoped-for results. In such cases, a hearing officer is admonished not to find a denial of a FAPE simply because, with the benefit of hindsight, it can be seen that the student did not make progress. *See, e.g.*, *Schaffer*, 554 F.3d at 477 (observing that the district court had properly concluded that a FAPE denial determination must not be made relying on hindsight evidence); *cf. O'Toole*, 144 F.3d at 702 (discussing the school's obligation not to ignore that an IEP is clearly failing over time).

are entitled to a stay-put provision that allows a child to remain in that alternative placement with a reimbursement guarantee, if applicable, until the FAPE challenge is fully resolved. 8 Va. Admin. Code. § 20-80-210(N)(16)(b). Thus, by engaging in the administrative process without delay, parents may substantially protect themselves from the financial risks that Parents assumed in this case.

In sum, Parents may have indeed been reasonable in their belief that FCPS would not return to in-person education in the fall of 2021; however, the reasonableness of their view about a FAPE for the academic year 2021-2022 at the time an enrollment decision was made  is not the applicable legal inquiry;[10] and the hearing officer did not improperly fail to consider it. Accordingly, his findings, or lack thereof, in that regard were not "contrary to law," as contended by Plaintiff.

### C. *Parents Have Not Carried Their Burden of Establishing That Plaintiff Was Denied a FAPE for either the 2021-2022 or 2022-2023 Academic Years.*

The hearing officer found that because Parents failed to engage with FCPS on the development of a revised IEP, despite repeated invitations to do so, Plaintiff's parents could not establish that Plaintiff had been denied a FAPE for academic years 2021-2022 or 2022-2023. A.R. 285-085–86; 348-035. Parents contest this conclusion, arguing that the defective January 2021 IEP was the applicable IEP for the purpose of determining whether Plaintiff had been denied a FAPE for all of the academic years at issue; and because the hearing officer found that the January 2021 IEP denied a FAPE, Parents argue that they have adequately established the denial of a FAPE for the purposes of their reimbursement claims at least through January 2022, if not for all of the academic years at issue. *See* [Doc. No. 71] at 9–10, 15.[11]

---

[10] The Court recognizes that the reasonableness of parents' decisions is a relevant consideration in determining whether reimbursement should be reduced or denied, even with a finding of a FAPE denial. 20 U.S.C. § 1412(a)(1)(C)(iii)(III). But it is not relevant to the threshold finding of whether or not a FAPE has been provided.

[11] Parents also seemingly argue, in the same section of the briefing, that the hearing officer should have made findings as to the denial of a FAPE before the January 2021 IEP; however, Parents agreed to all of the operative IEPs developed

As the hearing officer correctly stated, in determining whether Plaintiff was denied a FAPE for the 2021-2022 and 2022-2023 academic years, the central issue is whether Parents engaged in the required administrative process for developing and revising an IEP. *See* A.R. 348-025. Parents do not meaningfully address, or attempt to justify, their failure to engage in the IEP discussions after Plaintiff's withdrawal from FCPS; instead, they merely cite to evidence that they had been actively involved in the IEP development process in January 2021 and earlier, before Plaintiff's withdrawal. [Doc. No. 71] at 11–12 ("Parents fully cooperated … [t]hey attended and actively participated in the IEP meetings convened during the 2019-20 school year[.]").[12] Parents in effect argue that the deficient January 2021 IEP determines whether Plaintiff was denied a FAPE for the duration of the statute of limitations, and therefore Parents' right to reimbursement for private day school placement. Implicit in that position is the view that Parents had no obligation to engage further and that it was incumbent upon the FCSB to essentially amend the IEP on its own initiative so that Plaintiff would have been provided a FAPE for the 20221-22 and 20223 academic years. In other words, Parents seemingly contend that for the purpose of determining whether Plaintiff was denied a FAPE, the FCSB was saddled with the contextually-defective January 2021 IEP, not only for the remainder of the 2020-2021 school year, but for *the entire two-year* limitations period. Parents also essentially argue that because they reasonably enrolled their child and incurred the financial obligation for that enrollment, they were excused from any further obligation to engage with the public school concerning an IEP.

---

prior to that date. *See id.* at 15. Presumably because of that agreement, Parents do not seek compensation for the alleged denial of a FAPE during that time. *See* [Doc. No. 1] at 24–25.

[12] Also at oral argument, Parents submitted, through counsel, that they did not engage with FCPS upon receipt of the invitation to collaborate on a new IEP because the invitation was, in their view, just a *pro forma* letter intended to mitigate liability rather than provide an opportunity to meaningfully change the IEP. But whatever may be legitimate concerns in that regard, the most direct response to any such concerns is to promptly request a due process hearing, which freezes the current IEP for evaluation by a hearing officer, irrespective of the school's outreach or mitigation efforts.

The foundational concept for the IDEA is an interactive engagement between the school and parents in order to provide a FAPE through the development of an IEP. *See, e.g.*, *Bd. of Educ. of Yorktown Cent. Sch. Dist. v. C.S.*, 990 F.3d 152, 170 (2d Cir. 2021) ("The statute's insistence on communication and its careful articulation of procedural protections for parents stand at odds with a rule that would allow school districts to unilaterally amend their IEPs during the resolution period and affect the FAPE determination on which a child's schooling options rest."). The Fourth Circuit has recognized that foundational element in assessing a parent's right to reimbursement. *See MM*, 303 F.3d at 537.

In *MM*, the parents of "M.M.," like Parents here, refused to continue to engage in the IEP process after withdrawing M.M. from public school and seeking a private placement.[13] *Id.* at 536–37. And, like Plaintiff's parents, M.M.'s parents waited for most of the statutory period to run before seeking a due process hearing for reimbursement. *See id.* at 535, 537. The Fourth Circuit held that because the school district was not required to—and, indeed, could not, without the parents' cooperation—develop an IEP for the latter two school years, the parents could not fairly claim the failure to develop a compliant (FAPE-providing) IEP as a basis for private school reimbursement. *Id.* at 537; *see also T.B., Jr. by & through T.B., Sr. v. Prince George's Cnty. Bd. of Educ.*, 897 F.3d 566, 574 (4th Cir. 2018) ("We have also found that a school district's failure to properly finalize a student's IEP was harmless because the parents had refused to cooperate with the school."); *accord Schoenfeld v. Parkway Sch. Dist.*, 183 F.3d 379 (8th Cir. 1998) (finding that where a unilateral private placement is made without an opportunity for the district to revise an

---

[13] The parents in *MM* did not accept the school district's invitations to engage in the IEP process; and as a result, the school did not develop IEPs for subsequent years, and the parents withdrew the child from the district in 1996 after refusing to engage in the IEP process. The parents did not request a hearing until 1998. *Id.* at 535, 537.

IEP, "reimbursement for the expenses of … private education is not required even if it were assumed that private placement was appropriate").

The Fourth Circuit's pronouncements in *MM* require a rejection of Parents' claim that Plaintiff was denied a FAPE for the 2021-2022 and 2022-2023 academic years. Although, unlike here, the parents in *MM* withdrew their child before an IEP had been finalized, the Fourth Circuit made clear that a parent has a continuing obligation to engage in the administrative process for developing an IEP before claiming the denial of a FAPE. *See id*. As in *MM*, Parents failed to satisfy that obligation, and FCPS was unable to address those in-person services because of Parents' refusal to engage in that administrative process. In that regard, the Fourth Circuit's holding in *MM* underscores that under the plain statutory text of the IDEA, reimbursement may be denied based on the actions of the parents. 20 U.S.C. § 1412(a)(1)(C)(iii)(III) (enumerating the "unreasonableness with respect to actions taken by the parents" as a basis for rejecting reimbursement); *see also S.H. v. Fairfax Cnty. Bd. of Educ.*, 875 F. Supp. 2d 633, 657 (E.D. Va. 2012); *Hogan v. Fairfax Cnty. Sch. Bd.*, 645 F. Supp. 2d 554, 568 (E.D. Va. 2009) ("[H]earing officers routinely take the actions of parents into consideration when they make decisions about equitable compensation under the IDEA.").[14]

Here, the hearing officer correctly applied the reasoning of *MM* to conclude that Parents failed to engage with FCPS to develop a new IEP for the return to in-person education for the 2021-2022 and 2022-2023 academic years, as contemplated by the January 2021 IEP, and as a result, they cannot rely on the deficiencies of that IEP to claim an ongoing denial of FAPE for

---

[14] Plaintiff himself cites to cases in which reimbursement was denied under the IDEA because the parents "have not first given the public school a good faith opportunity to meet its obligations." *See* [Doc. No. 71] at 11 (citing *C.H. v. Cape Henlopen Sch. Dist.*, 606 F.3d 59, 72 (3d Cir. 2010) and *Rockwall Independent School District v. M.C.*, 816 F.3d 329 (5th Cir. 2016)).

those subsequent academic years. *See* A.R. 285-085–86.[15] Accordingly, the hearing officer's decision to deny reimbursement of Lab School tuition with respect to the 2021-2022 and 2022-2023 school years must be affirmed.

### D. Plaintiff Is Not Entitled to Reimbursement Based on a "Stay Put" Placement That Was Never Approved by the Hearing Officer

In order to obtain reimbursement for the Lab School tuition following the due process administrative hearing and the pendency of this action, Parents seek a declaratory judgment that the Lab School is Plaintiff's "stay put" placement. [Doc. No. 1] ⁋ 106. A "stay put" placement entitles a parent to receive reimbursement for a student's private school tuition prospectively until any appeal from the administrative proceedings is resolved if a hearing officer determines that (1) the student was denied a FAPE and (2) that a particular school where the student is or will be enrolled is an appropriate placement.  Specifically, the Virginia implementing regulation provides that

> [i]n cases where the decision is an agreement by the hearing officer with the parent(s) that a change in placement is appropriate, the hearing officer's decision must be implemented while the case is appealed and an implementation plan must be submitted by the local educational agency.
>
> a. If the decision is appealed or the school division is considering an appeal and the decision is not an agreement by the hearing officer with the parent(s) that a change in placement is appropriate, then the decision and submission of implementation plan is held in abeyance pursuant to the appeal proceedings.
>
> b. In cases the hearing officer's decision must be implemented while the case is appealed and an implementation plan must be submitted by the local educational agency.

8 Va. Admin. Code. § 20-81-210(N)(16); *see also* 34 C.F.R. § 300.518(d) (similar).

---

[15] Parents' conduct is therefore distinguishable from cases in which courts awarded reimbursement to parents who unilaterally placed their child in a private day school but then continued to engage in revising an IEP that remained deficient. *See, e.g.*, *XXXXXX by Smith v. Arlington Cnty. Sch. Bd.*, No. 1:20-cv-817, 2021 WL 2324164, at *8 (E.D. Va. June 7, 2021).

Critically, "stay put" relief applies only to those situations "where the decision [at the due process hearing] is an agreement by the hearing officer with the parent(s) that a change in placement is appropriate." 8 Va. Admin. Code. § 20-81-210(N)(16). As this Court has previously observed, "a new placement imposed by a hearing officer becomes the educational placement under the IDEA's 'stay-put' provision *if the hearing officer agrees* with the parents that a change in placement is appropriate." *M.S. v. Fairfax Cnty. Sch. Bd.*, 2006 WL 721372, at *8 (E.D. Va. Mar. 20, 2006) (emphasis added); *see also Sch. Comm. of Town of Burlington, Mass. v. Dep't of Educ. of Mass.*, 471 U.S. 359, 373–74 (1985) (interpreting the IDEA predecessor statute and observing that "it operates in such a way that parents who unilaterally change their child's placement during the pendency of review proceedings, without the consent of state or local school officials, do so at their own financial risk"); *Cnty. Sch. Bd. of Henrico Cnty., Vir. v. RT*, 433 F. Supp. 2d 692, 710 (E.D. Va. 2006) (applying the holding on "agreement" in *Burlington* to the IDEA). Thus, it is only if the hearing officer determines that a FAPE was denied by the school district and a particular private placement is appropriate based on that denial, that private placement must be continued or implemented at the school district's expense while the school district appeals the decision or attempts to cure the denial of FAPE through the development of a new IEP. *See Bd. of Educ. v. Schutz*, 290 F.3d 476, 484 (2d Cir. 2002) (holding that "once the parents' [administrative] challenge succeeds ... consent to the private placement is implied by law, and the requirements of [the stay-put provision] become the responsibility of the school district"); *Susquenita Sch. Dist. v. Raelee S. By & Through Heidi S.*, 96 F.3d 78, 84 (3d Cir. 1996) ("It is undisputed that *once there is state agreement with respect to pendent placement*, a fortiori, financial responsibility on the part of the local school district follows.") (emphasis added).

Here, at the time of the due process hearing, Plaintiff was no longer at the Oakland School but enrolled in the Lab School, and Parents could not, for the purpose of obtaining a "stay put" at the Lab School, benefit from the hearing officer's agreement with Parents that the Oakland School was appropriate in the spring of 2021. *Id.* at 14. Rather, the hearing officer needed to agree with Parents that they had been denied a FAPE for the purpose of enrolling Plaintiff at the Lab School for the 2021-2022 and 2022-2023 academic years. There was no such agreement by the hearing officer.[16] And in that regard, expanding stay-put relief based on any appropriate past placement, such as the Oakland School, as Parents argue, is inconsistent with binding law in this Circuit, which provides that stay-put relief is based on a *specific* placement, not a "like" placement. *See Wagner v. Bd. of Educ. of Montgomery Cnty.*, 335 F.3d 297, 301 (4th Cir. 2003) (observing that because Section 1415(k)(2) grants the hearing officer authority to place a child in an alternative educational setting during the pendency of the proceedings if needed, district courts do not have the authority to impose the provision of alternative "like" stay-put placements upon the school district, irrespective of the stay-put placement's availability to the student).

For the above reasons, the Court finds and concludes that there is presently no applicable "stay put" placement for Plaintiff and no right to reimbursement based on the "stay put" provision.

## IV.   CONCLUSION

For the foregoing reasons, it is hereby

---

[16] Interpreting and applying the "stay put" provision as Parents advance would grant reimbursement for the tuition at the Lab School that the hearing officer explicitly denied, *see* A.R. 348-025, a decision the Court by this Order affirms. In fact, granting "stay put" relief, which would include reimbursement for tuition paid through the issuance of this Order, and perhaps through any appeal to the Fourth Circuit, would reimburse Parents for tuition beyond the 2021-2022 and 2022-2023 academic years at issue in their underlying claim.

**ORDERED** that Defendant's Motion for Judgment on the Administrative Record [Doc. No. 66] and Defendant's Motion for Summary Judgment [Doc. No. 67] be, and the same hereby are, **GRANTED**; and it is further

**ORDERED** that Plaintiff's Motion for Judgment on the Administrative Record [Doc. No. 60] and Plaintiff's Motion for Summary Judgment [Doc. No. 63] be, and the same hereby are, **DENIED**.

The Clerk is directed to enter judgment in favor of Defendant Fairfax County School Board pursuant to Federal Rule of Civil Procedure 58 and to send a copy of this Order to all counsel of record.

March 28, 2024
Alexandria, Virginia

Anthony J. Trenga
Senior U.S. District Judge